15-3959-ag
Buffalo Transportation Inc. v. United States of America

# In the
# United States Court of Appeals
## For the Second Circuit

_____

August Term, 2016
No. 15-3959-ag

BUFFALO TRANSPORTATION, INC.
*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,
*Respondent-Appellee*.

_____

Petition for review of order of the Office of the Chief Administrative
Hearing Officer for the Executive Office of Immigration Review

_____

SUBMITTED: OCTOBER 6, 2016
DECIDED:  DECEMBER 22, 2016

_____

Before: NEWMAN, LYNCH, and DRONEY, *Circuit Judges*.

_____

Petition for review of order of the Office of the Chief Administrative Hearing Officer for the Executive Office of Immigration Review that found petitioner to have committed violations regarding verifications of its employees' immigration status. The Administrative Law Judge found that petitioner had committed numerous substantive violations. The Administrative Law Judge also found that the fines imposed for the substantive violations were not excessive. We **DENY** the petition for review.

---

Stephen F. Szymoniak, Law Office of Stephen F. Szymoniak, Williamsville, New York, *for Petitioner-Appellant*.

Andrew N. O'Malley, Trial Attorney, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Bernard A. Joseph, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C. *for Respondent-Appellee*.

---

DRONEY, *Circuit Judge*:

Buffalo Transportation, Inc. ("Buffalo Transportation") petitioned pursuant to 8 U.S.C. § 1324a(e)(8) for review of a final order of the Office of the Chief Administrative Hearing Officer for the Executive Office of Immigration Review ("OCAHO") that found

it to have committed substantive violations of Section 274A(b) of the Immigration and Nationality Act ("INA") and affirmed the imposition of fines by Immigration and Customs Enforcement of the Department of Homeland Security ("ICE"). The Administrative Law Judge ("ALJ") found that Buffalo Transportation had not timely complied with the requirements of 8 U.S.C. § 1324a(b) and related regulations that require employers to verify that an employee is legally authorized to work in the United States through executing a Form I-9 for each employee within three business days of hire. Buffalo Transportation petitioned this Court for review of the ALJ's decision on the grounds that the violations were "procedural" rather than substantive, and that ICE should have issued a warning rather than imposing fines. Buffalo Transportation also contends that the fines imposed were unreasonably high. We agree with the ALJ's determination of liability and adjustments of ICE's original fine amounts, and therefore **DENY** the petition for review.

**BACKGROUND**

Buffalo Transportation is located in Buffalo, New York, and provides transportation services to individuals for medical appointments. On August 22, 2013, ICE notified Buffalo Transportation of a scheduled audit of its Forms I-9 to occur on August 28, 2013. At the audit, ICE found that six of the completed Forms I-9 had technical or procedural errors and allowed Buffalo Transportation to correct those errors. ICE also found, however, that all 54 of the completed Forms I-9 were not created within three business days of the employees' hiring dates, and that Buffalo Transportation did not properly retain completed Forms I-9 for 84 former employees. On March 14, 2014, ICE served Buffalo Transportation with a Notice of Intent to Fine in the amount of $794.75 per violation (for a total of $109,675.50) which it calculated using the regulatory scheme at 8 C.F.R. § 274a.10(b)(2) and its own internal guidelines. These guidelines set the base and maximum

4

fines for various types of violations and adjust the fines for aggravating and mitigating circumstances. *See* ICE, Fact Sheet: I-9 Inspection Overview, *available at* https://www.ice.gov/factsheets/i9-inspection (last visited Oct. 11, 2016).

After receiving the Notice of Intent to Fine, Buffalo Transportation requested a hearing before an ALJ, as permitted by 5 U.S.C. § 554. Both Buffalo Transportation and ICE submitted briefing and evidence in support of their motions for a summary decision. The ALJ granted in part both Buffalo Transportation's and ICE's motions for summary decision.[1] The ALJ found Buffalo Transportation to have committed 81 violations for not retaining the Forms I-9 for former employees for the proper time period (the later of three years from date of hire, or if terminated, one year from

---

[1] Motions for summary decisions are governed by 28 C.F.R. § 68.38 (c), which provides that an ALJ "shall enter a summary decision for either party if the pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed show that there is no genuine issue as to any material fact and that a party is entitled to summary decision." If a party raises a genuine question of material fact, then the ALJ shall hold an evidentiary hearing. *Id*. § 68.38 (e).

termination) and 54 violations for current employees for Forms I-9 not prepared within three business days of hire.[2] The ALJ also determined that the fines assessed by ICE were excessive, and adjusted the penalty to $600 per violation for the former employees and $500 per violation for the current employees. Thus, the total fine that the ALJ assessed was $75,600. In making these adjustments to ICE's fines, the ALJ considered Buffalo Transportation's financial situation as well as other mitigating factors pursuant to 8 C.F.R. § 274a.10 (b)(2)(i)-(v). *See* J.A. 45.

**DISCUSSION**

**I.    Standard of Review**

We review an order of the OCAHO issued pursuant to 8 U.S.C. § 1324a under the arbitrary and capricious standard. 8 U.S.C. § 1324a(e)(8); *see Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 496–97 (2004) (applying arbitrary and capricious standard when

---

[2] A review of the Forms I-9 reflects that many of the forms were prepared immediately prior to the inspection and more than three business days from the hiring date. *See, e.g.*, Record on Appeal at 214-15.

6

the statute itself does not specify a standard for judicial review of agency action). We review an agency's factual determinations under the substantial evidence standard, *N.Y. & Atl. Ry. Co. v. Surface Transp. Bd.*, 635 F.3d 66, 71 (2d Cir. 2011) (citations omitted), while we review an agency's determinations on questions of law *de novo*, *see Nwozuzu v. Holder*, 726 F.3d 323, 326 (2d Cir. 2013) (citations omitted).

## II.    Substantive Violations

Section 274A(b) of the Immigration and Nationality Act requires employers to verify that their employees are legally authorized to work in the United States. 8 U.S.C. § 1324a(b). Regulations designate the Employment Eligibility Verification Form ("Form I-9") for this purpose, 8 C.F.R. § 274a.2(a)(2), and employers must complete these forms within three business days of hire, *id.* § 274a.2(b)(1)(ii). An employer must retain these forms and provide them for inspection by ICE upon three business days' notice for

7

current employees, and retain forms for one year for terminated employees. *Id.* § 274a.2(b)(2)(i)-(ii). If an employer does not comply with these requirements, it may face civil penalties between $110 and $1,100 per individual violation. *Id.* § 274a.10(b)(2) (for violations prior to November 2, 2015). An employer may be "considered to have complied" with the Form I-9 requirements if there is only a "technical or procedural failure" so long as the employer made a "good faith attempt to comply." 8 U.S.C. § 1324a(b)(6)(A). To avail itself of the good faith defense, an employer must also correct the relevant violations within ten business days of receiving notice of the technical or procedural failings. *Id.* § 1324a(b)(6)(B).

The Immigration and Naturalization Services (the predecessor agency to ICE) ("INS") issued interim guidance about what constitutes a "technical or procedural violation" as opposed to a "substantive violation" for which the good faith defense would not be available. Memorandum of Paul W. Virtue, INS Office of

Programs, Interim Guidelines: Section 274A(b)(6) of the INA (March 6, 1997), *available at* 74 Interpreter Releases 706, App. I (April 28, 1997) ("Virtue Memorandum"). ICE has continued to follow that guidance. The OCAHO has consistently relied on the Virtue Memorandum to determine that the failure of an employer to complete a Form I-9 is a substantive violation of Section 274a.2. *See United States v. Anodizing Indust., Inc.*, 10 OCAHO 1184 (2013); *United States v. Platinum Builders of Cent. Fla., Inc.*, 10 OCAHO 1199 (2013).

Formal adjudications and agency-promulgated rules are given considerable deference under the Administrative Procedure Act and *Chevron. See Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984); *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55 (2d Cir. 2004). An informal agency interpretation that is neither a formal adjudication nor a promulgated rule may still receive deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Such informal agency guidance receives deference "'according to its

persuasiveness,' as evidenced by the 'thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Estate of Landers v. Leavitt*, 545 F.3d 98, 107 (2d Cir. 2008) *as amended* (Jan. 15, 2009) (quoting *United States v. Mead Corp.*, 533 U.S. 218, 221, 228 (2001)) (internal citation omitted); *see also Ketchikan Drywall Servs., Inc. v. Immigration & Customs Enf't*, 725 F.3d 1103, 1112–13 (9th Cir. 2013) (applying *Skidmore* deference to the Virtue Memorandum). We apply *Skidmore* deference to the Virtue Memorandum because we find it well-reasoned and thorough. It distinguishes between violations that effectively undermine immigration requirements (such as not filling out the form at all, or not including the employee's name) and those that create small but solvable problems (such as an omitted birth date). Moreover, the agency has greater expertise "when it comes to determining which omissions are substantive and which ought to be

excused." *Ketchikan*, 725 F.3d at 1113. Thus, we agree with the Virtue Memorandum, and with prior decisions of the OCAHO, *see, e.g., United States v. Dr. Robert Schaus, D.D.S.*, 11 OCAHO 1239 (2014), that failing to prepare Forms I-9 within three business days of hire is a substantive violation of the INA and its accompanying regulations.

The regulation clearly states that employers must have employees fill out the Form I-9, verify the employee's documentation, and have both employee and employer sign the form within three business days of hire. Failure to prepare a Form I-9 constitutes a substantive violation, Virtue Memorandum at 3, and necessarily includes the failure to prepare a Form I-9 within the time allotted by the regulations—here, three business days. The ALJ correctly determined that the 54 Forms I-9 presented to ICE at the audit contained substantive violations, as there is no genuine dispute that any of the 54 forms had been completed within three

business days of the employees' hiring dates. Indeed, it appears that Buffalo Transportation only prepared the 54 Forms I-9 for its current employees in response to ICE's notice of inspection.

Buffalo Transportation contends that it should have been given a Warning Notice pursuant to 8 C.F.R. § 274a.9(c) before receiving the ICE Notice of Intent to Fine. The government contends that this argument is unexhausted. Even assuming that Buffalo Transportation properly raised the warning notice claim, it is without merit. The regulation permits ICE or the Department of Labor "in their discretion" to give a warning of violations. *Id.* It does not require ICE to do so.

Buffalo Transportation also argues that it substantially complied with the employee verification requirements by keeping each employee's identifying documents on file. That argument is unavailing, however, because the relevant regulations explicitly reject that approach: "[C]opying . . . of [underlying documents] and

12

retention of the copy or electronic image does not relieve the employer from the requirement to fully complete section 2 of the Form I-9." 8 C.F.R. § 274a.2(b)(3); *see Ketchikan*, 725 F.3d at 1111 (rejecting the same argument).

**III.    Fines**

Buffalo Transportation also challenges the amount of the fines imposed by the ALJ as arbitrary. ICE imposed a fine of $794.75 per violation, which it calculated using the regulatory scheme at 8 C.F.R. § 274a.10(b)(2) and its own internal guidelines, which ICE uses to set the base penalty and adjust the fine for aggravating and mitigating circumstances.[3] *See* ICE, Fact Sheet: I-9 Inspection Overview, *available at* https://www.ice.gov/factsheets/i9-inspection (last visited Oct. 11, 2016). The ALJ considered that Buffalo Transportation was a small business, did not act in bad faith, lacked a history of violations, and

---

[3] Both the relevant statute and regulations include the following factors: (i) size of the business of the employer being charged, (ii) the good faith of the employer, (iii) the seriousness of the violation, (iv) whether or not the individual was an unauthorized alien, and (v) the history of previous violations of the employer. 8 U.S.C. § 1324a(e)(5); 8 C.F.R. § 274a.10(b)(2).

that there was no evidence that Buffalo Transportation had hired unauthorized workers as mitigating factors. The ALJ also considered Buffalo Transportation's financial situation. In light of this evidence, Buffalo Transportation's arguments, and the statutory and non-statutory factors—including Buffalo Transportation's ability to pay—the ALJ reduced the fines to $600 per violation for past employees and $500 per violation for current employees.

When reviewing agency fines our inquiry is limited to whether the agency made "an allowable judgment in [its] choice of the remedy." *United States v. Int'l Bhd. of Teamsters*, 170 F.3d 136, 143 (2d Cir. 1999) (internal quotation marks omitted). We conclude that the ALJ made such an allowable judgment here in determining the amount of the fines after properly assessing the various factors, including the seriousness and number of the violations.

Buffalo Transportation next argues that because the regulation provides for a broad range of allowable fines (from $110 to $1,100)

and the Virtue Memorandum includes no specific guidance, the ALJ impermissibly made an arbitrary determination as to the amounts of the fines. Buffalo Transportation also contends that other similarly-situated employers received larger reductions from ICE-imposed fines than it did. We do not find these arguments convincing. The ALJ provided well-reasoned bases for the fine amounts based on Buffalo Transportation's specific circumstances.

* * *

For the foregoing reasons, we hold that the ALJ's determinations regarding liability were not arbitrary and capricious and were supported by substantial evidence, and that the fines were within the ALJ's allowable discretion. Accordingly, we **DENY** the petition for review.